The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
************
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Lumber Insurance Company is the Workers Compensation insurance carrier for Parker Forest Products, Inc.
2. Plaintiff was injured on August 10, 1998.
3. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
4. Plaintiffs average weekly wage on the date of injury was $400.00, which yields a compensation rate of $266.66.
5. Plaintiffs medical records from Wautaga Orthopedics and Johnson City Medical Center are admitted into evidence.
6. A Form 25R from Dr. Maher F. Habashi dated May 27, 1998 is admitted into evidence.
7. Check stubs from Parker Forest Products, Inc. to Mountain Empire Radiology for $198.00 and Johnson City Medical Center for $2,117.00 are admitted into evidence.
8. Plaintiffs earnings records from Parker Forest Products, Inc. are admitted into evidence.
9. Plaintiffs Unemployment Security Commission of North Carolina records are admitted into evidence.
10. Plaintiffs personnel file is admitted into evidence.
11. Plaintiffs payroll records are admitted into evidence.
************
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 36 years old. Plaintiff has been performing sawmill work and logging all of his life. He began working for Parker Forest Products, Inc. in May 1997 as a loader operator and relief sawer.
2. Parker Forest Products, Inc. is a sawmill, owned and operated by Tim Parker. Parker Forest Products, Inc. has no other business interests or entities except the sawmill. In conjunction with the operation of the mill, Parker Forest Products, Inc. contracts for timber rights and contracts with loggers for timber to be cut and transported to the mill.
3. From May 1997 until June 1998, plaintiff worked at Parker Forest Products, Inc. as an employee. He was paid on an hourly basis, taxes were withheld, and he was issued a W-2 form as a result of this employment.
4. While employed in the sawmill, plaintiff worked at the direction of a supervisor, also employed by Parker Forest Products, Inc. Plaintiff was given specific break times and a specific lunch hour. Plaintiff was expected to report at a certain time in the mornings and to work eight hours per day. This hourly wage is reflected in the earnings records report, which was attached to the pre-trial agreement.
5. In June 1998, plaintiff quit his job at Parker Forest Products, Inc. and went to work for Bakersville Pallet. At the time of the hearing before the Deputy Commissioner, plaintiff was still employed by Bakersville Pallet.
6. In July, 1998, Tim Parker, general manager of Parker Forest Products, Inc., approached plaintiff and asked if he would be interested in doing some contract logging.
7. Plaintiff agreed to log several tracts of timber for Tim Parker, beginning in July 1998. Plaintiff logged two tracts of timber over a 2 to 3 week period as a result of this agreement. In August 1998, Mr. Parker purchased timber rights to a certain tract of land and again contracted with plaintiff for logging.
8. The agreement between plaintiff and Mr. Parker was that plaintiff would be paid by the board foot for the timber and that the board foot price was reduced for rental of the logging equipment which was owned by Mr. Parker. Mr. Parker indicated that some of the loggers he contracts with have their own equipment. However, because the sawmill logged its own timber in the past, the company has equipment available for those who want to use it.
9. Both Plaintiff and Mr. Parker testified that plaintiff had life-long knowledge of logging and no training in this regard had been given by Parker Forest Products, Inc.
10. Plaintiff was not supervised on the logging jobs he did for Parker Forest Products, Inc. He was allowed to work his own hours at his own pace, within his discretion. He was not paid on an hourly basis. No one from Parker Forest Products, Inc. was present on the tract site to direct his work. A Form 1099 was filed pursuant to this contract work. No taxes were withheld and no W-2 was filed. The payroll records and check stubs of Parker Forest Products, Inc. reflect the differences between plaintiffs job in the sawmill and his status as a logger.
11. In the early to mid-1990s, Parker Forest Products, Inc. did employ its own logging crew. During that time, there was a foreman who supervised the crew. The crew met at the office of Parker Forest Products, Inc. in the mornings and drove together to the specific site. The crew was given specific guidance and instructions on how and when to log, when to take breaks and when to eat lunch. The crews were paid on an hourly basis. The employee-loggers who were employed in the mid-1990s had an entirely different relationship with Parker Forest Products, Inc. than plaintiff did.
12. Mr. Parker testified that there were no conversations about workers compensation between plaintiff and himself. Plaintiff, however, testified that Mr. Parker told him that he did have workers compensation coverage.
13. On August 10, 1998, plaintiff arrived at the timber tract, hauling the logging equipment he had rented from Tim Parker. Plaintiff had his five year old son with him. While unloading the bulldozer from the trailer, plaintiff, whose son was sitting on his lap, was forced to throw his son off the trailer and jump off himself, as the bulldozer began to slide. As a result, he fractured his right ankle and sprained his left ankle. Plaintiff was not paid for any work attempted on that job, as no timber was harvested.
14. Following the accident, plaintiff was treated at Watauga Orthopedics in Johnson City, Tennessee. He received medical treatment from Dr. Karen McRae, who ultimately prescribed custom orthotics for his feet, because of a flatfoot condition in his left foot. However, Dr. McRae was unable to give an opinion as to whether this flatfoot condition resulted from the injury of August 10, 1998. She also rated plaintiff with a ten percent (10%) permanent partial impairment of the right foot, which was based on the fracture sustained in the accident.
15. The bills for medical treatment provided by Watauga Orthopedics and Johnson City Medical Center were paid by Tim Parker.
16. Plaintiff sought a second opinion of his impairment rating from Dr. Habashi at North State Medical Group in Lincolnton, North Carolina. Dr. Habashi rated plaintiff with a twelve percent (12%) impairment to his right foot.
************
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
From May 1997 through June 1998, plaintiff was an employee of Parker Forest Products, Inc. However, when plaintiff began logging for Parker Forest Products, Inc. in July 1998 and on August 10, 1998, the date of plaintiffs accident, plaintiff was an independent contractor. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers Compensation Act. N.C.G.S. 97-2(3).
************
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiffs claim under the law, must be, and is hereby DENIED.
2. Each side shall pay its own costs, except defendants shall pay an expert witness fee in the amount of $250.00 to Dr. Karen McRae, if not already paid.
This the ___ day of October 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER